# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONCEPCION URRUTIA, JR., ) | Case No.: 1:17-cv-01676 - JLT |
| Plaintiff, ) | ORDER REMANDING THE ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g) |
| v. ) | |
| NANCY A. BERRYHILL, ) Acting Commissioner of Social Security, ) | ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF CONCEPCION URRUTIA, JR., AND AGAINST DEFENDANT NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY |
| Defendant. ) | |

Concepcion Urrutia, Jr., asserts he is entitled to a period of disability and disability insurance benefits under Title II of the Social Security Act. Plaintiff argues the ALJ erred in evaluating the record and seeks judicial review of the administrative decision denying his application for benefits. Because the ALJ erred in rejecting limitations identified by an examining physician, the matter is **REMANDED** for further proceedings.

## **BACKGROUND**

In Plaintiff's application for benefits, he alleged disability due to anxiety, panic attacks, and chest pains beginning August 21, 2013. (Doc. 9-4 at 3) The Social Security Administration denied her application at the initial level and upon reconsideration. (*See generally* Doc. 9-4) Plaintiff requested a hearing and testified before an ALJ on June 3, 2016. (Doc. 9-3 at 25, 45) The ALJ determined Plaintiff was not disabled under the Social Security Act and issued an order denying benefits on August 31, 2016. (*Id.* at 25-38) Plaintiff filed a request for review of the decision with the Appeals Council, which

1

denied the request on October 19, 2017. (*Id.* at 2-4) Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security.

## **STANDARD OF REVIEW**

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## **DISABILITY BENEFITS**

To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## ADMINISTRATIVE DETERMINATION

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520, 416.920(a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

**A.  Relevant Medical Evidence[1]**

In August 2013, Plaintiff went to an emergency room for "chest pain localized in the left [side] of his chest," which he "described as pressure and [tightness] of moderate to severe intensity." (Doc. 9-9 at 13)  Plaintiff reported his chest pain was constant and "sometimes radiated to [his] left arm." (*Id.*) Dr. H. Rajender Reddy performed a catheterization and "an angiogram, which showed normal ejection fraction of 65%." (*Id.* at 27) In addition, the angiogram showed 40% stenosis in the left anterior descending artery and "20-30% stenosis" in the right coronary artery. (*Id.*) Dr. Reddy recommended "aggressive medical treatment," including Aspirin, Lipitor, and Nitroglycerin. (*Id.*) He also recommended Plaintiff have "stenting of the left anterior descending vessel." (*Id.* at 35-36) Plaintiff was discharged from the hospital on August 25. (*Id.* at 26)

Plaintiff had a PET scan of his heart performed on August 29, 2013. (Doc. 9-9 at 67) Dr. Reddy determined Plaintiff's left ventricular chamber size was enlarged. (*Id.*) He found Plaintiff's myocardial perfusion was normal and myocardial scan was normal. (*Id.*) Dr. Reddy opined Plaintiff had an "overall normal PET scan with an ejection fraction of 69%." (*Id.*, emphasis omitted)

The following week, Plaintiff had an echocardiogram. (Doc. 9-9 at 69) Dr. Reddy opined the imagining showed "normal aortic, mitral, tricuspid, and pulmonic valves." (*Id.*) In addition, he determined Plaintiff had "[m]ild concentric left ventricular hypertrophy" with an ejection fraction of

---

[1] Although the Court has reviewed the entire record, Plaintiff's challenge to the ALJ's opinion relates to the physical residual functional capacity only. As a result, the Court's summary of the medical record omits treatment notes and opinions concerning mental health treatment.

65% and "Mild Mitral Annual Calcification." (*Id.*)

Dr. Emmanuel Fabella performed an internal medicine consultation on February 4, 2014. (Doc. 9-9 at 75) Dr. Fabella noted the only medical record available for his review was "the cardiology report dated August 25, 2013." (*Id.*) Plaintiff told Dr. Fabella that he had panic attacks "on a daily basis especially when out in public," and chest tightness. (*Id.*) He denied having "weakness, syncope or lightheadedness." (*Id.* at 76) Dr. Fabella determined Plaintiff was "able to generate 40 pounds of force using the right hand, and 30 pounds of forcing using the left hand." (*Id.*) In addition, he found Plaintiff's strength was "5/5 … without focal motor deficits." (*Id.* at 78) He observed that Plaintiff did not require an assistive device for ambulation and "moved about briskly in the examining room." (*Id.* at 77) According to Dr. Fabella, Plaintiff's range of motion was "grossly within normal limits" in his back, shoulders, elbows, wrists, hands, hips, knees, and ankles. (*Id.* at 77-78) Dr. Fabella indicated that his "findings on physical examination [were] based on formal testing, as well as by direct observation of the claimant." (*Id.* at 79) He concluded Plaintiff was "able to lift and carry 20 pounds occasionally and 10 pounds frequently, limited due to coronary artery disease." (*Id.*) Dr. Fabella found Plaintiff had no restrictions with sitting but was "able to walk and stand four to six hours out of an eight-hour day limited due to coronary artery disease." (*Id.*) Dr. Fabella also concluded that, "due coronary artery disease," Plaintiff was limited to occasional climbing, balancing, kneeling, crawling, and walking on uneven terrain; and should avoid "climbing ladders and working at heights." (*Id.*)

On February 14, 2014, Dr. James Wellons reviewed Plaintiff's medical records, including the hospital treatment notes and Dr. Fabella's report. (Doc. 9-4 at 9) Dr. Wellons indicated he gave "little/no weight" to the opinion of Dr. Fabella "because of heavy reliance on the claimant, lack of support by other evidence, and a snapshot CE- overestimate of limitations." (*Id.*) Dr. Wellons opined the record did "not reveal a severe residual somatic impairment." (*Id.*) Dr. Ocrant affirmed the decision that Plaintiff did not have a severe physical impairment on July 31, 2014. (*Id.* at 28)

In September 2014, Plaintiff sought emergency care for dizziness and giddiness. (Doc. 9-11 at 39) He reported that he had "pain, tingling and numbness" in his hands hand left leg. (*Id.* at 44) Dr. Timothy Bullard noted that Plaintiff's risk factors included "coronary artery disease," and his associated symptoms included "chest pain, abdominal pain and shortness of breath." (*Id.*) Plaintiff was

provided education materials on chest pain and anxiety upon discharge and directed to follow-up with a physician within two to three days. (*Id.* at 46)

In July 2015, Plaintiff was taken by ambulance to an emergency room for chest pain. (Doc. 9-11 at 23-24) Plaintiff described his pain as a moderate "heaviness" in his chest and said it was not radiating in nature. (*Id.* at 27) He had a normal range of motion, strength, and no tenderness. (*Id.* at 28) Plaintiff had an electrocardiogram, which showed "T wave abnormality." (*Id.* at 31) He was discharged the same day in stable condition and again received education materials regarding chest pain and stress. (*Id.* at 29.

B.  **Administrative Hearing Testimony**

Plaintiff testified before an ALJ at a hearing held on June 4, 2016. (Doc. 9-3 at 45) He stated that he obtained his GED and did not have vocational training. (*Id.* at 52) Plaintiff confirmed that his work history included working a head custodian and filler operator for a tomato processing plant. (*Id.* at 54) He reported that he stopped working "due to some chest pains that [he] had." (*Id.* at 57) He explained that he "was taken to the hospital," where "they found some plugged arteries." (*Id.*) Plaintiff testified that he remained hospitalized for three days, and after his release, he "started getting all kinds of anxiety and just like panic… because [he] kept getting the little pains." (*Id.*)

C.  **The ALJ's Findings**

Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial gainful activity after the alleged onset date of August 21, 2013. (Doc. 9-3 at 27) Second, the ALJ found Plaintiff had the following severe impairments: "anxiety with panic attacks versus panic disorder with agoraphobia versus generalized anxiety disorder, depressive disorder not otherwise specified versus major depressive disorder, recurrent, moderate versus major depressive disorder, recurrent, severe versus major depressive disorder, single episode;" coronary artery disease; hypertension; anemia; and post-traumatic stress disorder. (*Id.* at 28) At step three, the ALJ found Plaintiff's physical and mental impairments did not meet or medically equal a Listing. (*Id.* at 28-29) Next, the ALJ determined:

> [T]he claimant has the residual functional capacity to perform a wide range of medium work as defined in 20 CFR 404.1567(c): the claimant can lift and carry 50 pounds occasionally and 25 pounds frequently. The claimant can stand, walk, and sit for 6 hours each out of eight hours. The claimant can climb ladders, ropes,

5

scaffolding, ramps, and stairs, stoop, crouch, and crawl, and kneel frequently. The claimant must avoid concentrated exposure to hazards. The claimant can have no more than occasional face-to-face interaction with coworkers, supervisors and the general public (1/3 of the work day with each group) and is no more than occasionally able to understand, remember and carry out complex and detailed tasks or make judgments on complex and detailed work related job assignments.

(*Id.* at 29) With this residual functional capacity, the ALJ found at step four that Plaintiff was "capable of performing past relevant work as a production helper." (Doc. 9-3 at 37) Therefore, the ALJ concluded Plaintiff was not disabled from the alleged onset date through the date of the decision, August 31, 2016. (*Id.* at 37-38)

## **DISCUSSION AND ANALYSIS**

Appealing the ALJ's decision, Plaintiff argues that the ALJ erred in evaluating the medical opinion from Dr. Fabella. (Doc. 13 at 6-9) In addition, Plaintiff contends the decision of the ALJ lacks the support of substantial evidence in the record. (*Id.* at 10-11) Defendant argues that "[t]he ALJ reasonably assigned limited weight to the examining medical source opinion." (Doc. 14 at 5, emphasis omitted)

**A.     Evaluation of Medical Opinions**

In this circuit, the courts distinguish the opinions of three categories of physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). In general, the opinion of a treating physician is afforded the greatest weight but it is not binding on the ultimate issue of a disability. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Further, an examining physician's opinion is given more weight than the opinion of non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Thus, the courts apply a hierachy to the opinions offered by physicians.

A physician's opinion is not binding upon the ALJ and may be discounted whether another physician contradicts it. *Magallanes*, 881 F.2d at 751. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only by identifying "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may

be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.*, 81 F.3d at 830. When there is conflicting evidence, "it is the ALJ's role to determine credibility and to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The ALJ's resolution of a conflict must be upheld when there is "more than one rational interpretation of the evidence." *Id.; see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ").

1. The ALJ's analysis

The ALJ addressed the findings of Dr. Fabella by stating:

> The undersigned limited weight to this assessment as it appears to be based on the subjective claims of the claimant rather than based on the essentially normal physical examination findings. Claimant's coronary artery disease is rather mild, and he had an overall normal PET scan with an ejection fraction [of] 69%.

(Doc. 9-3 at 34) The ALJ also indicated that he gave "great weight" to the opinions of Drs. Wellons and Ocrant, but "according the claimant the greatest benefit of the doubt," the ALJ "reduced his residual functional capacity to that of the medium level, taking into consideration his mild coronary artery disease." (*Id.* at 36)

Plaintiff contends the ALJ improperly rejected limitations identified by Dr. Fabella, an examining physician, who was "the only physician to personally examine and provide an assessment [of] Urrutia's physical impairments." (Doc. 13 at 11) Because the limitations were contradicted by Drs. Wellons and Ocrant—who opined Plaintiff did not have a severe physical impairment and did not identify any limitations— the ALJ was required to identify specific and legitimate reasons for rejecting the limitations. *See Lester*, 81 F.3d at 830; *see also Moore v. Comm'r of Soc. Sec. Admin*, 278 920, 924 (9th Cir. 2002) (holding an "ALJ could reject the opinions of … examining physicians, contradicted by a nonexamining physician, only for specific and legitimate reasons that are supported by substantial evidence in the record") (internal quotation marks omitted)

        *a.    Plaintiff's subjective claims*

The Ninth Circuit determined a physician's opinion may be rejected where it is predicated upon a claimant's subjective complaints that have been properly rejected by the ALJ. *Ryan v. Comm'r*

*of Soc. Sec.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008). The Court explained that a physician's opinion "premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded, once those complaints themselves have been properly discounted." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995)).

Significantly, the ALJ fails to identify the portions of Dr. Fabella's findings that were based solely upon Plaintiff's subjective complaints. Dr. Fabella specifically indicated that his "findings on physical examination [were] based on formal testing, as well as by direct observation of the claimant." (Doc. 9-9 at 79) Dr. Fabella indicated each of the limitations identified— concerning Plaintiff's ability to lift, carry, stand, walk, climb, balance, kneel, crawl, and work at heights— were "due to coronary artery disease."[2] (*Id.*) Thus, the record does not support the ALJ's conclusion that the limitations identified by Dr. Fabella can be attributed to Plaintiff's subjective complaints, and this reason does not support the ALJ's rejection of the limitations identified.

### b. *Consistency with the record*

The Ninth Circuit explained the opinion of a physician may be rejected where an ALJ finds incongruity between a doctor's assessment and his own medical records, and the ALJ explains why the opinion "did not mesh with [his] objective data or history." *Tommasetti v. Astrue,* 533 F.3d 1035, 1041 (9th Cir. 2008). Similarly, inconsistency with the overall record constitutes a specific and legitimate reason for discounting a physician's opinion. *Morgan v. Comm'r*, 169 F.3d 595, 602-03 (9th Cir. 1999). However, to reject an opinion as inconsistent with the treatment notes or medical record, the "ALJ must do more than offer his conclusions." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988).

Evidently, the ALJ concluded the "PET scan with an ejection fraction [of] 69%" was inconsistent with the limitations identified by Dr. Fabella. (Doc. 9-3 at 33) Likewise, the ALJ indicated the objective findings on the examination did not support Dr. Fabella's conclusions. (*Id.*) However, the ALJ failed to explain how these limitations identified were not consistent with the

---

[2] The Court notes, however, that Dr. Fabella fails to explain *why* the disease requires these limitations. For example, there is no explanation why the disease precludes crawling. On the other hand, the ALJ cannot simply decide that the disease does not do so.

8

diagnosis of coronary artery disease or the limitations identified by Dr. Fabella due to that impairment, and not based upon his testing of Plaintiff. Instead, the ALJ offered only a conclusion that the limitations identified were not consistent with mild coronary artery disease, and instead imposed lesser restrictions. For example, while Dr. Fabella opined Plaintiff should only occasionally climb balance, kneel, crawl, and walk on uneven terrain, the ALJ opined Plaintiff could engage in similar postural activities on a frequent basis. (*Compare* Doc. 9-9 at 79 *with* Doc. 9-3 at 29) Given the ALJ's failure to clearly address the conflict or explain his conclusions, the Court is unable to find the evidence identified by the ALJ supports his decision to give little weight to the opinions of Dr. Fabella.

2. Lack of substantial evidence

When an ALJ rejects contradicted opinions of physicians, the ALJ must not only identify specific and legitimate reasons for rejecting those opinions, but the decision must also be "supported by substantial evidence in the record." *Lester*, 81 F.3d at 830. Plaintiff contends the ALJ's opinion lacks the support of substantial evidence in the record, because "Drs. Ocrant and Wellons did not rely on testing not considered by Dr. Fabella nor did they provide[] a different diagnosis." (Doc. 13 at 10)

The term "substantial evidence" "describes a quality of evidence ... intended to indicate that the evidence that is inconsistent with the opinion need not prove by a preponderance that the opinion is wrong." SSR 96-2p[3], 1996 SSR LEXIS 9 at *8. "It need only be such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the medical opinion." *Id.*; *see also Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (defining "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion").

The opinions of non-examining physicians "may constitute substantial evidence when . . . consistent with other independent evidence in the record." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Andrews*, 53 F.3d at 1042. Such independent evidence may include laboratory test

---

[3] Social Security Rulings (SSR) are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). Although they do not have the force of law, the Ninth Circuit gives the Rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989); *see also Avenetti v. Barnhart*, 456 F.3d 1122, 1124 (9th Cir. 2006) ("SSRs reflect the official interpretation of the [SSA] and are entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations").

9

results or contrary reports from examining physicians. *See Lester*, 81 F.3d at 831. On the other hand, "[t]he nonexamining physicians' conclusion, with nothing more, does not constitute substantial evidence, particularly in view of the conflicting observations, opinions, and conclusions of an examining physician." *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990)

As Plaintiff observes, the opinions of Drs. Wellons and Ocrant were based upon the review of the same evidence of Dr. Fabella—including the hospital treatment notes from August 2013 and the PET scan results— as well as the findings offered by Dr. Fabella after the consultative examination, which Dr. Wellons rejected. Thus, their opinions were not based upon independent clinical findings, and cannot constitute substantial evidence. *See, e.g.*, *Ortega v. Comm'r of Soc. Sec.*, 2013 WL 6798930 (E.D. Cal. Dec. 20, 2013) (finding the opinions of non-examining physicians were not substantial evidence supporting the rejection of limitations identified by an examining physician where the non-examining physicians "looked at the same records and objective medical tests").

Moreover, because the ALJ gave little weight to the only opinion in the record that identified physical limitations, the ALJ clearly rendered his own medical findings that with "mild coronary artery disease," Plaintiff could perform medium work with the postural limitations. (*See* Doc. 9-3 at 36 ["the undersigned has reduced his residual functional capacity to that of the medium level, taking into consideration his mild coronary artery disease"]) However, it is well-settled law that an ALJ may not render his own medical opinion and is not empowered to independently assess clinical findings. *See, e.g., Tackett v. Apfel*, 180 F.3d 1094, 1102-03 (9th Cir. 1999) (holding an ALJ erred in rendering his own medical opinion); *Banks v. Barnhart*, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) ("An ALJ … must not succumb to the temptation to play doctor and make his own independent medical findings"); *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (as a lay person, the ALJ is "simply not qualified to interpret raw medical data in functional terms"). Consequently, the Court finds the ALJ's opinion lacks the support of substantial evidence in the record.

**B.     Remand is Appropriate**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative

agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

Because the ALJ erred in evaluating the medical record related to Plaintiff's physical limitations and abilities, a remand for further proceedings is necessary for an ALJ to properly evaluate the record related to Plaintiff's physical impairment and determine Plaintiff's physical residual fuctional capacity. *See Perez*, 958 F.2d at 446 (finding that where the ALJ offered an opinion that lacked the support of substantial evidence "it is necessary to remand for the taking of further functional evidence").

## CONCLUSION AND ORDER

For the reasons set forth above, the Court finds the ALJ erred in his evaluation of the medical record and failed to apply the correct legal standards. Consequently, the ALJ's decision cannot be upheld by the Court. *See Sanchez*, 812 F.2d at 510. Accordingly, the Court **ORDERS**:

1. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and
2. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Plaintiff Concepcion Urrutia, Jr., and against Defendant, Nancy A. Berryhill, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated: __**March 7, 2019**__  　　　　　　__/s/ Jennifer L. Thurston__
　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE